UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

MICHAEL HINDS,

     Defendant.

_____/

Case No. 18-cr-20533

District Judge Victoria A. Roberts

Magistrate Judge Mona K. Majzoub

## REPORT AND RECOMMENDATION

The United States of America charges Defendant Michael Hinds with (1) possession with intent to distribute a controlled substance: cocaine base, (2) felon in possession of a firearm, and (3) possession of a firearm in furtherance of a drug trafficking crime.  On August 3, 2018, Hinds pleaded not guilty to these charges.  Before the Court is Defendant's motion to suppress (docket no. 23), which has been referred to the undersigned for a hearing and determination.  (Docket no. 24.)  Having reviewed the pleadings and conducted an evidentiary hearing on February 6, 2019, the undersigned issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Defendant's motion to suppress (docket no. 23) be **GRANTED**.

## II.    REPORT

### A.    Background

The events at issue in Defendant's motion occurred on the evening of November 23, 2017.  (Transcript of February 6, 2019 hearing, docket no. 31 pp. 10–11.)  Detroit Police Department officers Daniel Harnphanich and Christopher Bush were driving a marked police vehicle when

they observed a minivan parked in front of a vacant dwelling on Ellsworth Street in Detroit, MI. (*Id.* at 13–14.) The officers noted that the vehicle was occupied and filled with smoke. (*Id.* at 14.) Suspecting that these circumstances indicated marijuana use, Officer Harnphanich stopped the patrol car alongside the minivan, and asked whether the occupants were "smoking it up." (*Id.* at 17.) The officers exited their vehicle to conduct an "informational encounter," with Officer Harnphanich approaching the driver's side window and Officer Bush approaching the passenger's side. (*Id.* at 22–23, 52.) The officers determined that the smoke was emanating from tobacco products, but simultaneously observed Hinds in the front passenger seat rolling a marijuana cigarette. (*Id.* at 22, 52, 54.) Officer Harnphanich testified that the amount of marijuana he could see was "maybe five grams." (*Id.* at 32.) He also saw "vials all over the center console that [are] commonly used for packaging marijuana." (*Id.* at 22.) Hinds informed Officer Harnphanich that he had a license to use medical marijuana, but Officer Harnphanich stated that "even if [Hinds had] a [medical-marijuana] card, [he wasn't] properly transporting [the marijuana]." (Officer Harnphanich Body-Camera Footage, Government's Exhibit A at 00:55.) Hinds again offered to produce his medical-marijuana card, but Officer Harnphanich responded that Hinds would "have time to show [the officers his] card" but that it wouldn't "mean shit." (*Id.* at 01:18.) When asked to clarify that statement, Officer Harnphanich testified that "even if you have a medical marijuana card . . . , there's [*sic*] still limits on how much marijuana you can have in the vehicle, and if you do have marijuana in the vehicle, at that time it's got to be in a lockbox in the furthest part of the vehicle from you." (Docket no. 31, p. 27.)

The officers then detained the occupants and searched the vehicle, uncovering a bag containing "various types of drugs and a handgun with a magazine as well." (*Id.* at 28.) That evidence forms the basis of the Government's charges against Hinds.

2

### C.      Analysis

Defendant Hinds moves to suppress evidence obtained during the November 23, 2017 informational encounter and vehicle search.  In support, Hinds alleges that Officers Harnphanich and Bush violated the Fourth Amendment by detaining the van without reasonable suspicion and by searching the van without probable cause.

#### 1.      *Detention / Reasonable Suspicion*

First, Hinds asserts that the officers lacked reasonable suspicion to conduct a temporary investigative seizure (a.k.a., a *Terry* stop).  (Docket no. 23, p. 4.)  The Government contends that Hinds consented to the initial questioning and therefore was not detained until after Officer Bush observed marijuana on his lap.  In addition, the Government argues that the officers had reasonable suspicion to detain the van for a *Terry* stop.

An investigating officer may briefly detain an individual for questioning upon reasonable suspicion "that criminal activity may be afoot."  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  To justify such a stop, officers must identify "specific and articulable facts" compromising reasonable and individualized suspicion of a criminal violation.  *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).   Reasonable suspicion is more than a "mere hunch" but falls "considerably short of satisfying a preponderance of the evidence standard."  *United States v. Calvetti*, 836 F.3d 654, 666 (6th Cir. 2016).

Officers Harnphanich and Bush observed an occupied vehicle filled with smoke and parked outside of a vacant house.  In the officers' experience, that scenario typically coincided with marijuana use.  (Docket no. 31, pp. 17, 19, 50.)  Under the circumstances, the officers had reasonable suspicion to justify the initial stop and questioning.

### 2. *Search / Probable Cause*

Defendant Hinds asserts that Officers Harnphanich and Bush searched the vehicle without probable cause. (Docket no. 23, p. 6.) The Government contends that the officers' observation of marijuana in plain view established probable cause to search the van. (Docket no. 25, pp. 11–12.) The crux of this dispute is whether Hinds' status as a medical-marijuana patient negates the significance of the officers' observation that he possessed marijuana.

### a. <u>Asserted Violation: Improper Transport</u>

During the encounter at issue, Officer Harnphanich stated that he could search the minivan "because even if [Hinds had] a [medical-marijuana] card, [he wasn't] properly transporting [the marijuana]." (Officer Harnphanich Body-Camera Footage, Government's Exhibit A at 00:55.)

However, the Michigan Medical Marihuana Act ("MMMA") preempts the Michigan statute criminalizing improper transportation of marijuana (Mich. Comp. Laws § 750.474). *People v. Latz*, 318 Mich. App. 380, 387 (2016). Accordingly, § 750.474 cannot be enforced against licensed MMMA patients. *Id.* Hinds offered proof that on November 23, 2017 he was a licensed medical-marijuana user, and the Government did not object. (Docket no. 31, p. 56.)

The Government contends that the MMMA itself criminalizes public use of marijuana, thereby justifying Officer Harnphanich's assertion that Hinds was improperly transporting marijuana. (Docket no. 32, pp. 7–8.) In support, the Government cites *People v. Anthony*, No. 337793, --- N.W.2d ----, 2019 WL 290026 (Mich. Ct. App. Jan. 22, 2019), a case in which the Michigan Court of Appeals held that "the MMMA provides that its limited license for qualifying patients to use marijuana does not extend to activity occurring in 'any public place.'" *Anthony*, 2019 WL 290026 at *9.

However, that pronouncement exceeds the language of the statute that the court cited in support, Mich. Comp. Laws § 333.26427(b)(3)(B).  In particular, § 333.26427(b)(3)(B) states that the MMMA "does not permit any person to . . . [s]moke marihuana . . . in any public place."  The distinction between "smoking" and "use" made no difference in *Anthony* because the officers involved in that case observed both the smell and residue of burned marijuana, creating probable cause that the defendant had smoked marijuana in public in violation of § 333.26427(b)(3)(B).  *Id.* at *2.  In the present case, however, the smoke/use distinction remains salient because neither Officer Harnphanich nor Officer Bush observed Hinds smoking marijuana.  Nor did either officer smell or see burned marijuana.  Accordingly, nothing in the record suggests that Officers Harnphanich and Bush had probable cause to believe that Hinds violated § 333.26427(b)(3)(B).

### b.      Effect of MMMA on Probable Cause

Hinds asserts that because he is a licensed medical-marijuana user, his possession of marijuana failed to establish probable cause for the vehicle search at issue.  (Docket no. 33, p. 6.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The automobile exception allows officers to search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a crime."  *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007).

Typically, the sight of marijuana would constitute probable cause for a vehicle search.  *See, e.g.*, *Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018) ("Seeing a small bag of marijuana (an illegal controlled substance in Tennessee) is enough to give officers probable cause to search a

vehicle.").  The question the present case is whether Defendant's status as a medical-marijuana user should create an exception to that rule.

Upon review of pertinent caselaw, the prevailing rule is that police officers may find probable cause "without anticipating or investigating 'a defendant's possible defenses to apparent illegality,' including protection under the MMMA."  *Johnson v. Williams*, No. 14-cv-12790, 2016 WL 1425706, at *2 (E.D. Mich. Apr. 12, 2016) (Levy, J.) (citing *United States v. Ashbourne*, 571 F. App'x 422, 425 (6th Cir. 2014)).  In support of that rule, courts have emphasized that the MMMA creates only a limited affirmative defense to the general proscription of marijuana possession and does not "prohibit searches when a valid MMMA card is a potential defense to arrest or other punishment."  *See*, *e.g.*, *Johnson*, 2016 WL 1425706, at *2.

However, the leading cases also suggest in *dicta* that "clear and uncontroverted" evidence of MMMA compliance could preclude a finding of probable cause based on marijuana possession. *See id.*; *United States v. Duval*, 742 F.3d 246, 252 (6th Cir. 2014).

The "clear and uncontroverted" exception can be traced to a decision from the Michigan Court of Appeals, *People v. Brown*, 297 Mich. App. 670, 678, 825 N.W.2d 91, 95 (2012).  In *Brown*, the court of appeals upheld a search warrant despite the fact that the underlying affidavit did not reference the defendant's status as an MMMA patient.   But in a footnote, the *Brown* Court opened the door to potential challenges where the defendant's MMMA status is clearly established:

> While we decline, in light of the pertinent case law, to impose an affirmative duty on the police to obtain information pertaining to a person's noncompliance with the MMMA before seeking a search warrant for marijuana, if the police do have clear and uncontroverted evidence that a person is in full compliance with the MMMA, this evidence must be included as part of the affidavit because such a situation would not justify the issuance of a warrant.

*Brown*, 297 Mich. App. at 677 n. 5.

Lacking any clear and binding authority on this issue, the undersigned will proceed to analyze (1) whether the "clear and uncontroverted" rule is supported by the Fourth Amendment (and related jurisprudence) and (2) whether Officers Harnphanich and Bush had "clear and uncontroverted" evidence of Hinds' MMMA compliance, thus invalidating their probable cause determination.

The Fourth Amendment prohibits unreasonable searches. Interpreting the term "unreasonable," the courts in *Brown*, *Duval*, *Ashbourne*, and *Johnson* determined that officers could apply for a search warrant without investigating a suspect's potential compliance with the MMMA because such a requirement would impose an undue burden on police. However, to prevent "police overreach," the *Brown* Court created an exception where a suspect's MMMA status is made clear to the investigating officers without the need for any independent undertaking on their part. *Brown*, 297 Mich. App. at 677 n. 5. Thus, the rule envisioned in Brown is that a search is unreasonable when the suspected criminal violation (marijuana possession) is readily refuted by the clear presentation of an affirmative defense (full MMMA compliance).

Other circuits and state courts take various approaches. State appellate courts in California and Washington have endorsed searches based on licensed possession of medical marijuana. *See People v. Strasburg*, 148 Cal. App. 4th 1052, 1060 (2007) (observing that California's medical-marijuana act "provides a limited immunity—not a shield from reasonable investigation"); *State v. Fry*, 168 Wash. 2d 1, 7–8, 228 P.3d 1, 5 (2010) (holding that Washington's medical-marijuana act "only created a potential affirmative defense" and did not "mak[e] the act of possessing and using marijuana noncriminal or negate any elements of the charged offense"); *People v. Waxler*, 224 Cal. App. 4th 712 (2014) (determining that officers were "entitled to investigate to determine

7

whether [the suspect] possessed marijuana for personal medical needs and to determine whether he adhered to [California's medical-marijuana act's] limits on possession").

In contrast, the Arizona Supreme Court adopted a rule that closely follows *Brown*'s logic:

[T]he general proscription of marijuana in Arizona and AMMA's limited exceptions thereto support finding probable cause based on the smell or sight of marijuana alone *unless, under the totality of the circumstances, other facts would suggest to a reasonable person that the marijuana use or possession complies with AMMA*. This "odor (or sight) unless" standard . . . preclude[es] officers or magistrates from *ignoring* indicia of AMMA-compliant marijuana use or possession when assessing probable cause.

*State v. Sisco*, 239 Ariz. 532, 538, 373 P.3d 549, 555 (2016) (emphasis added).

Ultimately, the *Brown* and *Sisco* approaches adhere most closely to the Fourth Amendment's goal of prohibiting unreasonable searches.  Observing MMMA-compliant marijuana use does not create probable cause that a person has violated the law.  Officers should not be required to undertake any additional investigative legwork in order to evaluate MMMA compliance, but if all signs point toward compliance, a search based solely on possession of marijuana should be deemed unreasonable.

### c.      Clear and Uncontroverted Evidence of Full Compliance

The Court should find that Hinds presented "clear and uncontroverted" evidence of MMMA compliance.  As recounted above, Hinds offered more than once to produce his medical-marijuana license, which was valid on the date of the search at issue.  In addition, Officers Harnphanich and Bush had no reason to believe that Hinds violated the MMMA.

The Government notes that the MMMA prohibits smoking marijuana in public, but neither officer testified that he smelled or saw burned marijuana.  Officer Harnphanich also testified that he "could search the vehicle [to] ascertain how much marijuana [Hinds] had because [he] saw the vials and everything and even if you have a medical marijuana card, . . . there's [*sic*] still limits on

how much marijuana you can have in the vehicle." (Docket no. 31, p. 27.) However, when cross examined regarding this issue, Officer Harnphanich testified as follows:

> Q:      [T]here weren't two and a half ounces [of marijuana] in the car, correct?
>
> A:      Not that I could see.

(*Id.* at 33.) As set forth above, Officer Harnphanich testified that he observed approximately five grams (0.18 ounces) of marijuana in plain view. (*Id.* at 32.) Accordingly, the officers lacked probable cause to believe that Hinds possessed more marijuana than the 2.5 ounces permitted by the MMMA.

Unlike in *Brown*, the officers in this case were presented with uncontroverted evidence of MMMA compliance before they executed the search. To conclude that the search at issue was unreasonable would not impose unduly burdensome requirements on investigating officers.

### D.      Conclusion

For the above-stated reasons, it is recommended that Defendant's motion to suppress (docket no. 23) be **GRANTED**.

## III.      NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 4, 2019             s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: March 4, 2019             s/ Leanne Hosking
                                 Case Manager